# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOHN JORDAN,**

              **Plaintiff,**

**v.**                                                    **Case No:   6:15-cv-570-Orl-31KRS**

**TRAVIS WOLFF, LLP,**

              **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **TRAVIS WOLFF, LLP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND/OR TRANSFER (Doc. No. 9)** |
| **FILED:** | **April 24, 2015** |

## I.   PROCEDURAL HISTORY.

On December 19, 2014, Plaintiff John Jordan ("Jordan") filed a complaint in the Circuit

Court of the Ninth Judicial Circuit, in and for Orange County, Florida against Defendant Travis

Wolff, LLP ("Travis Wolff").   Jordan alleged the Travis Wolff was negligent in the preparation

of audited financial statements for Trans-Trade, Inc. ("Trans-Trade"), which financial statements

Jordan relied on to his detriment in connection with the sale of his freight forwarding company,

Forward Logistics Group ("FLG"), to Trans-Trade.   Doc. No. 3.

Travis Wolff made a limited appearance through counsel and removed the case to this

Court based on diversity jurisdiction.   Doc. No. 1.   Travis Wolff now moves to dismiss the case

for lack of personal jurisdiction and failure to state a claim on which relief could be granted. Alternatively, Travis Wolff asks that this Court transfer the case to a United States District Court in Texas pursuant to 28 U.S.C. § 1631 or 28 U.S.C. § 1404(a).   Doc. No. 9.   The motion is supported by the following evidence:

- Amended Affidavit of Perry Kaufman, CPA ("Amended Kaufman Aff."), Doc. No. 22-1[1]; and

- Travis Wolff Retainer Letter ("Retainer Letter"), Doc. No. 9-2.

Jordan filed a response in opposition to the motion.   Doc. No. 26.[2]   His response is supported by the following evidence:

- Declaration of John Jordan ("Jordan Decl."), Doc. No. 26-1;

- Letter of Intent between Trans-Trade and Jordan ("Letter of Intent"), Doc. No. 26-2;

- Consolidated Financial Statements with Independent Auditors' Report dated April 30, 2010 prepared by Travis Wolff ("Auditors' Report"), Doc. No. 26-3;

- Declaration of Doug Guy ("Guy Decl."), Doc. No. 26-4[3];

- Declaration of Scottie McPherson ("McPherson Decl."), Doc. No. 26-5[4]; and

---

[1] Kaufman is the managing partner of Travis Wolff.   Amended Kaufman Aff. 4.   His amended affidavit replaces the original affidavit filed at Doc. No. 9-1.

[2] In its response to the motion, counsel for Jordan complain that they were not given more time to conduct jurisdictional discovery and that, therefore, they were unable to depose a representative of Travis Wolff.   Doc. No. 26, at 3 n.1.   I note that the record reflects that Jordan did not file a motion asking the Court to compel a representative of Travis Wolff to appear for a deposition during the approximately two and one-half months granted to conduct jurisdictional discovery.   *See* Doc. No. 15.   Also, counsel for Jordan did not appeal the denial of the motion for an additional enlargement of time to file the response to the motion (Doc. No. 25).

[3] Guy was the Chief Technology Officer of Trans-Trade from 2009 through 2011.   Guy Decl. ¶ 2.

[4] McPherson is an attorney for Jordan.   McPherson Decl. ¶ 2.

- Plaintiff's First Request for Production of Documents, Doc. No. 26-6.

With leave of Court, Travis Wolff filed a reply memorandum.   Doc. No. 29.

The motion has been referred to me for issuance of a Report and Recommendation.   It is ripe for review.   The Court must first determine whether it can exercise personal jurisdiction over Travis Wolff.   *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).   Because I recommend that the Court find that it cannot exercise personal jurisdiction over Travis Wolff, I will next address the motion to transfer the case to a district court in Texas.   I will not address the motion to dismiss for failure to state a claim on which relief can be granted because, in the absence of personal jurisdiction, the Court lacks the power to resolve those issues.   *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (per curiam).

## II.   ALLEGATIONS OF THE COMPLAINT AND THE PARTIES' EVIDENCE.[5]

### A.     *The Parties*.

At all times relevant to the complaint, Jordan was a resident of Florida.   He was the sole shareholder of FLG.   Doc. No. 3 ¶ 6.   FLG was a freight forwarding company based in Orange County, Florida.   *Id.* ¶ 1.   Jordan is currently the President of Total Logistic Services, Inc., based in Orlando, Florida.   Jordan Decl. ¶ 15.   Jordan is domiciled in Florida.   *Id.* ¶ 14.   Jordan does not own property in Texas; maintain a place of business in Texas; serve as an officer or board member of any Texas company; or maintain any bank accounts, telephone numbers or post office boxes in Texas.   *Id.* ¶ 16.

Travis Wolff is a registered Texas limited liability partnership engaged in the practice of public accountancy.   Amended Kaufman Aff. ¶ 5.   Its offices are located in Dallas, Texas.   *Id.* ¶

---

[5]  After review of the record, I find that there are no material factual discrepancies between Jordan's allegations and Jordan and Travis Wolff's factual submissions.

4.   Travis Wolff possessed an accounting license in Florida from March 15, 2002 through December 31, 2011.   *Id.* ¶ 12.   Travis Wolff is not currently licensed to conduct business in Florida.   *Id.*   For the time period January 2010 through March 2015, 1.4% of Travis Wolff's total number of clients had Florida addresses.   *Id.* ¶ 15; McPherson Decl. ¶ 10 (documents produced by Travis Wolff showed more than thirty-one Florida addresses to which invoices were sent between 2010 and 2015).   Travis Wolff performed work for these entities with Florida addresses, primarily preparing federal or state tax returns.   Amended Kaufman Aff. ¶ 15.   From January 2010 to June 2015, the "far majority" of Travis Wolff's business came from non-Florida clients.   *Id.* ¶ 14.   Travis Wolff does not maintain a place of business in Florida.   It has never owned any real estate, personal property or other assets in Florida.   It never maintained any of its business records or materials in Florida.   It did not and does not actively engage in advertising in Florida.   Amended Kaufman Aff.   ¶¶ 8-13.   Specifically, roughly 13 of its 6,386 advertising contacts possess Florida addresses.   *Id.* ¶ 13.   Travis Wolff is known internationally as Moore Stephens TravisWolff, LLP.   Retainer Letter, at 2.   Documents produced by Travis Wolff showed that it utilized the services of Moore Stephens Lovelace, an Orlando-based firm in the "Moore Stephens" global affiliate network, as agents to service Travis Wolff's clients.   McPherson Decl. ¶ 11.

B.   *The Transaction At Issue*.

Trans-Trade was engaged in a freight forwarding and customs house brokerage business. Doc. No. 3 ¶ 17.   In 2010, Trans-Trade engaged in an industry "roll up" of freight forwarding companies.   *Id.* ¶¶ 1, 10; Guy Decl. ¶ 3.

On or about January 18, 2010, Travis Wolff and Trans-Trade entered into an agreement for Travis Wolff to perform services for Trans-Trade and its subsidiaries.   Amended Kaufman Aff. ¶ 17.   Specifically, the scope of Travis Wolff's undertaking was to audit the consolidated balance

sheet of Trans-Trade and its subsidiaries as of December 31, 2009, and the related consolidated statement of income, stockholders' equity, and cash flows for the period from September 11, 2009 to December 31, 2009 in accordance with auditing standards generally accepted in the United States. *Id.* ¶ 18; Retainer Letter. Travis Wolff also agreed to prepare certain tax returns for Trans-Trade. Retainer Letter, at 5.

Trans-Trade told Travis Wolff that it needed these audited financial statements for two reasons: (1) to satisfy its mezzanine finance requirements; and (2) to provide to prospective freight forwarding companies that Trans-Trade was seeking to purchase as part of its roll-up plan and strategy to acquire or merge with other freight forwarding companies. Guy Decl. ¶ 4. Travis Wolff necessarily would have known that prospective acquisitions would be reviewing these audited financial statements as part of their due diligence. *Id.* ¶ 5.

The audit performed by Travis Wolff did not involve any travel to Florida, communication with anyone in Florida, or any business activity in Florida. Amended Kaufman Aff. ¶ 21. During the audit, all of the employees of Trans-Trade with whom Travis Wolff communicated were located in Texas. *Id.* ¶ 20. All Travis Wolff's work related to the audit was performed outside of Florida. *Id.* ¶ 22. Travis Wolff "did not maintain any contact" with Jordan or any representative of FLG while performing the audit. *Id.* ¶ 25.

In April 2010, Travis Wolff issued its Auditors' Report to Trans-Trade for the period from September 2009 through December 31, 2009.[6] Doc. No. 22-1 ¶ 19. The Auditors' Report represented in the financial statements that Trans-Trade had assets of $7,121,203.00, liabilities of

---

[6] In June 2010, Travis Wolff reissued its Auditors' Report to Trans-Trade for the time period from September 2009 to December 31, 2009. Doc. No. 22-1 ¶ 19.

$4,994,391.00, negative retained earnings of ($684,833.00) and long-term debt of $10,761,572.00 as of December 31, 2009.   Doc. No. 3 ¶ 11.

Also in April 2010, Trans-Trade began negotiations with Jordan to purchase FLG and all of its assets as part of its industry "roll up" of freight-forwarding companies. Doc. No. 3 ¶¶ 1, 10. As part of this process, senior officers of Trans-Trade provided to Jordan at the FLG offices located in Orlando, Florida audited financial statements of Trans-Trade and the Auditors' Report.   Doc. No. 3 ¶ 10; Doc. No. 26-1 ¶ 7.   Travis Wolff knew that Jordan would rely on the audited financial statements and Auditor's Report in making his decision to sell his FLG stock to Trans-Trade and accepting earn out payments in lieu of a lump-sum payment from Trans-Trade.   Doc. No. 3 ¶ 10. Specifically, the Auditors' Report prepared by Travis Wolff states as follows:

> On April 13, 2010, the Company [Trans-Trade] executed a Letter of Intent whereby an acquisition entity of Trans-Trade, Inc. will acquire all of the assets and assume certain operating liabilities of FLG, Orlando, Florida for approximately $4,500,000; $2,000,000 due at close and the remainder in contingent "earn out" payments. The transaction is conditioned on the completion of customary due diligence and obtaining suitable financing.

*Id.*; Auditors' Report, at 24.

Jordan was induced by the Auditors' Report and the audited financial statements therein to consummate the sale of FLG and to accept as consideration for the purchase a substantial portion of the purchase price paid as an "Additional Price," consisting of "Contingent Payments" based upon a percentage of "Net Revenues" generated from FLG's former locations to be paid over two years, rather than as a lump-sum payment.   Doc. No. 3 ¶ 12; *see generally* Letter of Intent.   The closing of Jordan's sale of his stock in FLG to Trans-Trade took place in Florida.   Jordan Decl. ¶ 5.

In December 2010, after the sale of FLG to Trans-Trade had closed, the President of Trans-Trade told Jordan that the audited financial statements provided to Jordan were inaccurate because they failed to include payroll.   Doc. No. 3 ¶ 13; Jordan Decl. ¶¶ 2, 13.   These inaccuracies significantly changed Trans-Trade's expected earnings before interest, taxes, depreciation and amortization ("EBITDA") based on what was presented to Jordan in the Auditor's Report.   Doc. No. 3 ¶¶ 3, 13.   These miscalculations became evident in October 2011 when Trans-Trade showed assets of $8,313,108.31, liabilities of $18,134,183.93, loss of retained earnings of ($8,692,064.25) and long-term debt of $28,602,630.26.   *Id.* ¶ 14.

Notwithstanding the undisclosed financial problems of Trans-Trade, the core business acquired through FLG continued to prosper through February 2011.   *Id.* ¶ 16.   The former FLG business brought in over $8 million in revenue and over $2 million in gross profit.   *Id.* ¶ 19.   The Year One Contingent Payment due to Jordan in September 2011 was $641,900.76.   *Id.* ¶ 20.   Trans-Trade failed to make the Year One and Year Two contingent payments to Jordan, except for a partial payment of $5,000.00.   *Id.* ¶¶ 21-22.

## III.   PERSONAL JURISIDCTION ANALYTICAL STANDARD.

The Court considers two questions in resolving whether personal jurisdiction exists. "First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute."   *Mut. Serv. Ins. Co. v. Frit Indus.*, 358 F.3d 1312, 1319 (11th Cir. 2004). "Second, we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution . . . ."   *Id.*   The Due Process Clause "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not

offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A plaintiff seeking to establish personal jurisdiction over a non-resident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The facts alleged in the complaint are taken as true to the extent that they are not controverted by the defendant's affidavits. *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). However, a court need not accept legal conclusions or those facts that are not well-pled. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (noting that "*only* the well pled facts of plaintiff's complaint . . . must be accepted as true" (emphasis added)). When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Mazer*, 556 F.3d at 1274 (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002)).

The Court may hold an evidentiary hearing on a motion to dismiss, but it is not required to do so. *Madara*, 916 F.2d at 1514. When, as here, a court does not hold an evidentiary hearing, if the allegations of the complaint and the evidence presented conflict, the court must draw all reasonable inferences in Plaintiff's favor. *Id.*

## IV.     PERSONAL JURISDICTION ANALYSIS.

A.     *Specific Personal Jurisdiction*.

1.     <u>Commission of a Tortious Act in Florida</u>.[7]

The Florida long-arm statute determines whether this Court can exercise specific or general jurisdiction over Travis Wolff.   Jordan relies on section 48.193(1)(a)(2), Fla. Stat., as the basis for exercise of specific jurisdiction.   This section provides as follows:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> . . . .
>
> 2.     Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(2).

Florida law recognizes a tort of negligent performance of an audit in suits against an accounting firm.   The elements of the tort are set forth in section 552 of the Restatement (Second) of Torts.   *Deloitte & Touche v. Gencor Indus., Inc.*, 929 So. 2d 678, 681 (Fla. 5th Dist. Ct. App. 2006) (citing *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 15 (Fla. 1990), and *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 338 (Fla. 1997)).   Subsection 1 of section 552 provides that

> [o]ne who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

---

[7]  Because Jordan relies only on the tortious act provision of the Florida long-arm statute, I will not discuss Travis Wolff's alternative arguments that other subsections of section 48.193(1)(a) also would be not a basis for exercise of specific personal jurisdiction over it in Florida.

*Id.* at 682 (quoting Restatement (Second) of Torts § 552(1)) (internal quotation marks omitted). Subsection 2 of section 552 provides that "liability [for such a negligent misrepresentation] is limited to loss suffered . . . by the person *or* one of a limited group of persons for whose benefit and guidance he [the tortfeasor] intends to supply the information *or knows that the recipient intends to supply it.*"   *Id.* (quoting Restatement (Second) of Torts § 552(1)(a)) (internal quotation marks omitted).[8]

Travis Wolff contends that any alleged tort it committed was not committed within the State of Florida.   Doc. No. 9, at 13.   It submitted evidence that it did not prepare the Auditors' Report in Florida, all of the Trans-Trade employees with whom it communicated during the audit were in Texas, and it did not communicate with Jordan or any representative of FLG while preparing the Auditors' Report.

Jordan counters Travis Wolff's argument with evidence establishing that Trans-Trade told Travis Wolff that one of the reasons it needed the Auditors' Report, including audited financial statements, was to provide the information to prospective freight forwarding companies that Trans-Trade was seeking to purchase.   The Auditors' Report shows that Travis Wolff knew that FLG, one of the prospective freight forwarding companies that Trans-Trade was seeking to purchase,

---

[8]   The statute of limitations for a negligence action in Florida is four years.   Fla. Stat. § 95.11(3)(a). In Florida, a negligence cause of action does not begin to run until a plaintiff knew or should have known facts alerting him of the existence of his cause of action.   *See, e.g., Jones v. Childers*, 18 F.3d 899, 906 & n.11 (11th Cir. 1994); *Keller v. Reed*, 603 So. 2d 717, 719 (Fla. 2d Dist. Ct. App. 1992) (in a concurring opinion, however, Judge Altenbernd questioned whether the negligence cause of action accrued before the plaintiff suffered actual damage).   Jordan alleges that he learned of the errors in the Auditors' Report during a telephone call with a representative of Trans-Trade in December 2010.   Doc. No. 3 ¶ 13.   He alleges that he did not suffer actual damages until Trans-Trade failed to make the first contingent payment due in September 2011.   *Id.* ¶ 20.   The complaint was filed in state court in this case on December 19, 2014.   *Id.* at 1.

was in Orlando, Florida.   Therefore, Jordan contends that Travis Wolff knew that Trans-Trade intended to provide Travis Wolff's Auditors' Report to FLG in Florida.

Although Florida courts have not conclusively resolved the legal issue, the United States Court of Appeals for the Eleventh Circuit has found that commission of an intentional tort that causes injury in Florida supports the exercise of personal jurisdiction over the non-resident defendant who has no other contacts with the forum.   *See Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008); *see also Canadian Steel, Inc. v. HFP Capital Markets, LLC*, No. 11-23650-CIV, 2012 WL 2326119, at *4 (S.D. Fla. June 19, 2012) (citing cases).   However, Jordan does not allege that Travis Wolff committed an intentional tort.   Rather, he alleges that Travis Wolff acted negligently, which negligence injured him in Florida.   Accordingly, in resolving the question of whether this Court could exercise specific jurisdiction over Travis Wolff, I will focus on case law involving nonintentional torts.

In *Wendt v. Horowitz*, 822 So. 2d 1252 (Fla. 2002), the Florida Supreme Court considered whether personal jurisdiction could be exercised in Florida over a non-resident attorney who had allegedly committed a tortious act in Michigan by, among other things, negligently preparing loan documents in Michigan for use by his client, a Canadian company, which the client then used to solicit investors who resided in Florida.   In *Wendt*, the plaintiff alleged that the non-resident attorney also committed tortious activity by providing incorrect information to government agencies in Florida.   The Court held that "in order to 'commit a tortious act' in Florida, a defendant's physical presence in Florida is not required."   *Wendt*, 822 So. 2d at 1260.   The Court further held that "'committing a tortious act' in Florida under section 48.193(1)(b)[9] can occur

---

[9] This section was subsequently redesignated as section 48.193(1)(a)(2).   *Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se. LLC*, No. 3:13-cv-306-J-34JRK, 2014 WL 1268584, at *6 n.4 (M.D. Fla. Mar. 27, 2014) ("*Cableview*").

through the nonresident defendant's telephonic, electronic, or written communications into Florida," provided that the cause of action arises from the communication.  *Id.*   It did not resolve the question of whether personal jurisdiction could be exercised in the case, however.   Rather, it remanded the case for a determination of whether the complaint stated a claim on which relief could be granted.   On remand, the Florida Fifth District Court of Appeals determined that the complaint failed to state claims on which relief could be granted.   *Horowitz v. Laske*, 855 So. 2d 169 (Fla. 5th. Dist. Ct. App. 2003).

In *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996), the United States Court of Appeals for the Eleventh Circuit held that jurisdiction under the tortious act provision of section 48.193 reaches the situation in which alleged negligence by a non-resident defendant causes injury in Florida.   In *Robinson*, the plaintiffs alleged that the non-resident defendants negligently drafted and reviewed will and trust documents that they intended to be administered in Florida under Florida law and that they mailed all correspondence to the decedent in Florida. Their negligence allegedly caused damage to an estate in Florida.   The Eleventh Circuit concluded that the Florida long-arm statute provided for personal jurisdiction over the defendant.   *Id.*

Similarly, in *Leedom Financial Services, LLC v. Geer & Associates, P.C.,* No. 8:10-cv-917-T-23EAJ, 2010 WL 1852395, at *2 (M.D. Fla. May 7, 2010), a judge of this Court determined that personal jurisdiction could be exercised over a non-resident accounting firm.   In *Leedom*, Stratus Group, Inc. ("Stratus"), a car dealership that both leased cars and collected the lease payments, sold Leedom Financial Services, LLC ("Leedom"), a financial services company based in Florida, an undivided interest in certain vehicle leases in exchange for Leedom's payment to Stratus of 50% of the unpaid principal and interest on each lease (the "Participation Agreement"). Geer & Associates, P.C. ("Geer") audited Stratus's financial statements in 2005, 2006, and 2007.

Its auditors' report stated that Geer prepared the audited financial statements for the purposes of complying with the Participation Agreement.   The report also stated that it was intended solely for the information and use of the board of directors and management of Stratus and Leedom.   In reliance on the audited financial statements and other documents, Leedom entered into another loan agreement under which Leedom advanced more than $14 million to Stratus.   Later, Leedom learned, after investigating an anonymous tip, that the audited financial statements were incorrect. Leedom terminated Stratus's rights under the Participation Agreement and the second loan agreement.   Owing Leedom more than $42 million, Stratus declared bankruptcy.   Leedom then sued Geer and one of its principals for breach of accounting standards and practices in Florida. *Id.* at *1.   The court found that, under Florida's long-arm statute, it could exercise personal jurisdiction over the defendants because (1) the defendants provided an audit report for the benefit of plaintiff in Florida, (2) the defendants knew that the plaintiff would rely on the audit report in Florida and (3) the Florida plaintiff suffered damages in Florida as a result of reliance on the audit report.   *Id.* at *2.

Travis Wolff argues that none of these cases apply to the facts presented here because it did not purposefully direct its preparation of the Auditors' Report to FLG or Jordan.   Unlike *Wendt* and *Robinson*, it had no direct communications with any individual, entity or government agency in Florida.   In contrast to *Leedom*, it prepared the Auditors' Report for the benefit of Trans-Trade, not for the benefit of FLG or Jordan.

Nevertheless, the evidence presented shows that Travis Wolff knew from communications with Trans-Trade that Trans-Trade would provide the Auditors' Report to prospective freight forwarding companies that Trans-Trade was seeking to purchase.   Travis Trade also knew as of the date of the Auditors' Report than one of the freight forwarding companies Trans-Trade was

seeking to acquire was FLG, located in Orlando, Florida.   Based on its previous discussions with Trans-Trade, therefore, Travis Wolff knew or had reason to believe that Trans-Trade would provide the Auditors' Report to FLG in Florida and that representatives of FLG would rely on the Auditors' Report as part of the due diligence required to be performed before the acquisition of FLG by Trans-Trade could be consummated.   Based on these facts, I recommend that the Court find that Travis Wolff allegedly committed a tortious act in Florida through the negligent preparation of the Auditors' Report, which it knew or had reason to believe would be communicated to FLG in Orlando, Florida and relied on by FLG in deciding whether to engage in the proposed transaction with Trans-Trade.

2.    <u>Minimum Contacts</u>.

Even if exercise of long-arm jurisdiction is proper under section 48.193, "[a] court can exercise personal jurisdiction only if the foreign corporation maintains 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notations of fair play and substantial justice.'"   *Wendt*, 822 So. 2d at 1258 (alteration in original) (quoting *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 584 (Fla. 2000)) (internal quotation marks omitted).   "To constitute minimum contacts for purposes of personal jurisdiction, the defendant's contacts with the applicable forum must: (1) be related to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefit and protection of its laws; and (3) be such that the defendant should reasonably anticipate being haled into court there."   *Wallack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1367-68 (M.D. Fla. 2003) (citing *Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1994)).

Jordan argues that the Court should use the "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984), in making this analysis.   However, courts in the Eleventh Circuit have applied the minimum contacts test in negligence cases, rather than the *Calder* effects test that is used in cases alleging intentional torts.   *See Cableview*, 2014 WL 1268584, at *16 n.15; *Ashton v. Florala Mem'l Hosp.*, No. 2:06cv226-ID, 2006 WL 2864413, at *9 (M.D. Ala. Oct. 5, 2006).

Under the minimum contacts test, the inquiry is whether (1) there exists some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum, thus invoking the benefits and protections of its laws, and (2) the defendant's contacts with the forum relate to the plaintiff's cause of action or have given rise to it.   *Cableview*, 2014 WL 1268584, at *16 n.15 (quoting *Ellis v. Jackson Nat'l Life Ins. Co.*, No. 2:11-cv-1064-WKW, 2012 WL 3777150, at *6 n.6 (M.D. Ala. Aug. 30, 2012)).

In *Thomas v. Brown*, 504 F. App'x 845, 846 (11th Cir. 2013) (per curiam) (unpublished decision cited as persuasive authority), minority shareholders of Apex Radiology Inc. ("Apex"), a Florida corporation, sued the law firm of Singerman, Mills, Desbert & Kauntz Co., L.P.A. ("Singerman Mills"), an Ohio law firm, and eight individual shareholders of Singerman Mills in a Florida court alleging numerous claims, including gross negligence, arising out of the defendants' representation of Apex in a law suit filed in Ohio (the "Ohio lawsuit").   The defendants filed a motion to dismiss for lack of personal jurisdiction.   *Id.*

The trial court held that the defendants did not have sufficient minimum contacts with Florida to constitutionally subject them to jurisdiction in Florida, which finding was affirmed by the Eleventh Circuit.   *Id.* at 846-47.   The evidence showed that the defendants did not purposefully avail themselves of conducting the business underlying the lawsuit in Florida.   The defendants did not solicit any work from Apex.   Rather, they were hired to represent Apex by

individuals who were located in Missouri and Georgia.   During the defendants' representation of

Apex, the defendants' bills were mailed to Missouri, not to Florida.   No legal documents were

signed or filed in Florida, no hearing or depositions were conducted in Florida, and the arbitration

proceedings in the Ohio lawsuit were conducted in Ohio.   The defendants did not have any offices,

telephones, bank accounts or property of any kind in Florida.   They did not market themselves to

Florida.   They did not conduct any matters related to the Ohio lawsuit in Florida, and they did not

travel to Florida for anything connected with that lawsuit.   The defendants' only contacts with

Florida regarding the Ohio lawsuit involved telephone and electronic communications with two

shareholders of Apex who later were plaintiffs in the Florida lawsuit.   *Id.* at 848.

In sum, the Eleventh Circuit stated as follows:

> Here, Defendants did not reach out to Plaintiffs seeking
> representation; they never traveled to Florida in relation to this case;
> and there were no papers or agreements signed or filed in Florida.
> This minimal contact with Florida is not the type that would "lead a
> person to reasonably expect the possibility of ensuing litigation in a
> Florida court should some type of dissatisfaction or complications
> arise."   The fact that Apex is a Florida corporation and that
> Defendants spoke on the phone with Apex shareholders in Florida
> does not establish that Defendants would have "fair warning" that
> their activities related to this matters would subject them to the
> jurisdiction of Florida.   Accordingly, we conclude that Defendants
> do not have sufficient minimum contacts with the state of Florida.

*Id.* at 849 (citations omitted) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631

(11th Cir. 1996)).

The facts in the present case are similar to those in *Thomas*.   Travis Wolff is a Texas

limited liability partnership engaged in the practice of public accountancy.   It does not maintain a

place of business in Florida.   It has never owned any real estate, personal property or other assets

in Florida.   It never maintained any of its business records in Florida.   It did not actively engage

in advertising in Florida.

During the period in question, Travis Wolff was licensed to conduct business in Florida, and it did have clients with Florida addresses. It also used the services of Moore Stephens Lovelace, an Orlando-based firm in the "Moore Stephens" global affiliate network, to service some of its clients. However, Travis Wolff did not conduct business in Florida with Jordan or FLG. There is no evidence that Jordan or FLG were clients of Travis Wolff. There is no evidence that Travis Wolff used Moore Stephens Lovelace to assist in preparation of the Auditors' Report or to provide any service directly to FLG or Jordan.

Trans-Trade, a Texas company, engaged Travis Wolff to prepare the Auditors' Report. Travis Wolff did not communicate with anyone in Florida while conducting the audit. Travis Wolff did not travel to Florida or conduct any business activity in Florida while conducting the audit. All of Travis Wolff's work related to the audit was performed outside of Florida. Travis Wolff issued the completed Auditors' Report to Trans-Trade. There is no evidence that Travis Wolff directly provided a copy of the Auditors' Report to Jordan or FLG. Rather, representatives of Trans-Trade delivered the Auditors' Report to Jordan in Florida. Travis Wolff had no direct contacts with anyone in Florida related to the preparation of the Auditors' Report that forms the basis of the present case.

Jordan argues that Travis Wolff had sufficient contacts in Florida under the *Calder* effects test because it could reasonably foresee that its Auditors' Report would be provided to FLG and Jordan in Florida and that Jordan would rely on it to his detriment thereby suffering injury in Florida. As stated above, because this case does not allege an intentional tort, the *Calder* effects test does not apply. Even if it did, Jordan's argument fails under the United States Supreme Court's recent decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014).

In *Walden*, the plaintiffs sued Walden, a Georgia law enforcement officer.   They asserted that Walden seized money from them when they were traveling through the Atlanta airport in violation of their Fourth Amendment rights.   They filed a complaint in the United States District Court in Nevada.   They alleged that Walden had expressly aimed his actions at Nevada, where they claimed to reside, by preparing an allegedly false affidavit and submitting it to a United States Attorney's Office in Atlanta for purposes of establishing probable cause to forfeit the seized money.   *Id.* at 1119-20.

The Supreme Court found that Walden did not have the requisite minimum contacts with Nevada necessary to create specific jurisdiction.   The Court reasoned as follows:   "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state."   *Id.* at 1121.    First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State.   *Id.* at 1122.   Second, the minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."   *Id.*   The Court indicated that these same principles apply when intentional torts are involved.   *Id.*   Looking at the second element of the *Calder* effects test – whether the defendant expressly aimed his activity at the forum State – the Court required a showing that the effects of the tortious conduct connected the defendant to the forum State, not just to a plaintiff in the forum State.   *Id.* at 1120, 1124-26.   The Court found that Walden lacked the minimum contacts necessary to the exercise of jurisdiction over him in Nevada because none of the conduct at issue occurred in Nevada and plaintiffs' claims that they were injured in Nevada did not evince a connection between Walden and Nevada, rather than simply a connection between Walden and individuals who claimed to reside in Nevada.   *Id.*[10]

---

[10] In *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), the United States Supreme Court considered whether the defendant in a products-liability action had sufficient minimum contacts with

In the present case, Jordan has not shown any direct connection between Travis Wolff and Florida.   He has shown only that it was reasonably foreseeable to Travis Wolff that the Auditors' Report would be delivered to Florida and relied on by a Florida resident.   Under *Walden*, this foreseeable connection with a Florida resident is insufficient to establish a connection between Travis Wolff and the State of Florida.

In sum, the analyses in *Thomas* and in *Apex*, restated to conform to the facts in the present case, apply equally in this case:   Here, Travis Wolff did not reach out to Jordan or FLG; its representatives never traveled to Florida in relation to this case; and there were no papers or agreements signed or filed in Florida.   The fact that Jordan is a Florida resident, that FLG was a Florida corporation, and that Trans-Trade, Travis Wolff's client, provided a copy to the Auditors' Report to Jordan in Florida does not establish that Travis Wolff would have "fair warning" that its activities related to preparation of the Auditors' Report would subject them to the jurisdiction of Florida, just as Singerman Mann's retention to represent a Florida corporation in an Ohio lawsuit did not establish that the defendants in *Apex* would have "fair warning" that their activities related to this matters would subject them to the jurisdiction of Florida. Accordingly, I recommend that the Court conclude that Travis Wolff did not have sufficient minimum contacts with the State of Florida necessary for this Court to exercise specific personal jurisdiction over Travis Wolff in Florida.

---

the forum State because it placed its goods into the "stream of commerce," which made is reasonably foreseeable that they might be purchased in the forum State and injure the purchaser in that forum.   The Court rejected the mere "stream of commerce" argument, stating:   "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."   *Id.* at 2788.   It also rejected the argument that a defendant purposefully avails itself of conducting activities within the forum State if it could reasonably foresee that its products might be distributed in the forum State.   *Id.* at 2790.

B.      *General Jurisdiction*.

Jordan also asserts that the Court can exercise general jurisdiction over Travis Wolff. Doc. No. 26, at 9.   Section 48.193(2), Fla. Stat., provides that a "defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."   An assertion of general jurisdiction under this provision requires a showing of continuous and systematic general business contacts with this state.   *Crowe v. Paragon Relocation Res., Inc.*, 506 F. Supp. 2d 1113, 1122 (N.D. Fla. 2007); *Trs. of Columbia Univ. v. Ocean World, S.A.*, 12 So. 3d 788, 792 (Fla. 4th Dist. Ct. App. 2009).   "The continuous and systematic general business contacts sufficient to confer general jurisdiction present a 'much higher threshold' than those contacts necessary to support specific jurisdiction under section 48.193(1)."   *Ocean World*, 12 So. 3d at 792 (quoting *Seabra v. Int'l Specialty Imps., Inc.,* 869 So. 2d 732, 734 (Fla. 4th Dist. Ct. App. 2004)).

"In considering a defendant's contacts, courts must look at the defendant's activities collectively over a relevant period of years leading up to the lawsuit."   *Crowe*, 506 F. Supp. 2d at 1123 (citing *AutoNation, Inc. v. Whitlock*, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003)).   "[T]o support the court's exercise of general jurisdiction, a defendant's business contacts with the forum 'must be especially pervasive and substantial . . . .'"   *Id.* (second alteration in original) (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002), *aff'd*, 54 F. App'x 492 (11th Cir. 2002)).   "The contacts 'must be so extensive to be tantamount to [a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world.'"   *Id.* (quoting *Baker v. Carnival*

*Corp.*, No. 06-21527-CIV-HUCK/SIMONTON, 2006 WL 3360418, at *2 (S.D. Fla. Nov. 20, 2006)).

Among other things, the level of business conducted by an entity is important.   In *Crowe* and cases cited therein, courts in Florida found that less than 5% of a company's gross revenue coming from Florida was insufficient to constitute continuous and systematic business contacts for purposes of general jurisdiction.   *Id.* at 1124 (and cases cited therein).   Similarly advertising or solicitation of business in Florida is insufficient for purposes of general jurisdiction absent a continued and sustained effort to procure business or actual procurement of business. "[H]aphazard and sporadic solicitations are insufficient to constitute substantial activities within Florida.   *Id.*

Indeed, in *Daimler AG v. Bauman*, the Supreme Court made clear that the relevant inquiry "is not whether a corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'"   134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).   In *Daimler*, the plaintiffs sued a German corporation in California concerning incidents that occurred in Argentina.   134 S. Ct. at 751-52.   The plaintiffs argued that the district court could exercise general jurisdiction over the defendant corporation based on the contacts of its subsidiary with California.   *Id.* at 752.   The subsidiary was the largest supplier of luxury vehicles to the California market; its California sales accounted for 2.4% of the defendant's worldwide sales; and it had multiple California-based facilities, including a regional office, vehicle preparation center, and classic center.   *Id.*

In addressing the sufficiency of these contacts, the *Daimler* Court observed that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State" only in an "exceptional case." *Id.* at 761 n.19.   Even with the subsidiary's contacts attributed to the defendant, the Court determined that these California contacts were "slim" and fell short of an exceptional case. *Id.* at 760, 762.   The Court added that "[a] corporation that operates in many places can scarcely be deemed at home in all of them.   Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 762 n.20.   Accordingly, the Court found that the defendant was not subject to general jurisdiction in California. *Id.* at 762.

In the present case, I recommend that the Court find that Jordan has not established that Travis Wolff conducted continuous and systematic business activities in Florida.   While Travis Wolff was licensed to conduct business in Florida from March 2002 through December 31, 2011, it is not currently licensed to conduct business in Florida.   From January 2010 through March 2015, 1.4% of Travis Wolff's total number of clients had Florida addresses.   From January 2010 to June 2015, the "far majority" of Travis Wolff's business came from non-Florida clients.   Travis Wolff does not actively engage in advertising in Florida.   Roughly 31 of approximately 6,386 contacts Travis Wolff maintains possess Florida addresses.   While there is evidence that Travis Wolff worked with an Orlando agent in the Morris-Stephens network, there is no evidence of the amount of work it performed in Florida through that agent.   As discussed above, Travis Wolff did not maintain an office in Florida or maintain business records in Florida.

Jordan speculates that during the years that Travis Wolff was licensed in Florida its revenues were not *de minimus* based on invoices Travis Wolff's produced during jurisdictional

discovery, but Jordan offered no evidence of the amount charged in these invoices or any evidence of Travis Wolff's total revenues.   It contends that Travis Wolff has a presence on social media accessible in Florida, but it offered no evidence to support that assertion.   Travis Wolff admits that it has a business website and a Facebook page, but it asserts that it does not conduct business over the Internet.   Doc. No. 29, at 6.   Without more, the existence of a website and social media page does not show that Travis Wolff engaged in continuous and systematic business conduct in Florida.   *See Trs. of Columbia Univ.*, 12 So. 3d at 795 (noting that the mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible).   Jordan has failed to present evidence sufficient to warrant a finding that Travis Wolff is "essentially at home" in Florida.   *See Daimler*, 134 S. Ct. at 761.   In sum, Jordan's argument that Travis Wolff conducted "substantial business activity in Florida," Doc. No. 26, at 12, is simply that – an argument unsupported by facts.

In addition to a finding of continuous and systematic contacts, the Court must determine whether exercise of general jurisdiction comports with traditional notions of fair play and substantial justice.   *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1276 (2002) (citing *Posner*, 178 F.3d at 1215).

> In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, the court looks at: (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several states in furthering fundamental substantial social policies.

*Id.*

Both parties assert that it would be inconvenient for them to litigate this case in a forum other than where they reside and conduct business.   Because all of the Trans-Trade and Travis

Wolff's witnesses with knowledge of the audit at issue are located in Texas, however, the first factor weighs in favor of Travis Wolff.   *See, e.g.*, Jordan Aff. ¶ 15; Amended Kaufman Aff. ¶ 23.   Florida certainly has an interest in adjudicating a dispute in which one of its residents was allegedly injured in Florida, and litigation in this Court is more convenient for Jordan than litigation in Texas.   Therefore, these factors weigh in favor of Jordan.   *See Robinson*, 74 F.3d at 259.   Nevertheless, Jordan can obtain effective relief in a Texas court.   This factor is, therefore, neutral.   The interstate judicial system's interest in obtaining the most efficient resolution of controversies weighs in favor of Travis Wolff, based on the evidence that the audit at issue was not conducted in Florida and that both Travis Wolff and Trans-Trade's witnesses with knowledge of the audit are located in Texas.   Neither side asserts that litigating this case in Texas would undermine any of Florida's fundamental social policies.   On balance, the interests of fair play and substantial justice do not warrant litigating this case in Florida.

For these reasons, I recommend that the Court find that it cannot exercise general jurisdiction over Travis Wolff.

C.      *Transfer.*

Travis Wolff asks that the Court dismiss the complaint for lack of personal jurisdiction or, in the alternative, transfer this matter to a district court in Texas pursuant to 28 U.S.C. § 1631.[11] Because Travis Wolff is located in Dallas, Texas, the appropriate district court would be the United States District Court for the Northern District of Texas, Dallas Division.

Section 1631 provides that whenever a civil action is filed in a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such

---

[11]   Travis Wolff also argued that transfer would be appropriate under 28 U.S.C. § 1404.   I address transfer only under § 1631, because it is applicable if the Court accepts the recommendation that it cannot exercise personal jurisdiction over Travis Wolff.

action to any other court in which the action could have been brought at the time it was filed, and

the action will thereafter proceed in the transferee court as if it had been originally filed in that

court.   Section 1631 has been applied when a Court lacks personal jurisdiction.   *Edwards v.*

*Leach Int'l*, No. 8:14-cv-1326-T-36MAP, 2015 WL 1781835, at *3 (M.D. Fla. Apr. 20, 2015).

Jordan does not contend that this case could not have been filed originally in Texas, and I

see no impediment to such filing.   Rather, Jordan's primary argument against transfer is that

Travis Wolff is seeking "some type of 'home field' advantage" by litigating the case in Texas.

Doc. No. 26, at 13.   His counsel cites no evidence or legal authority supporting the argument that

a federal District Court in Texas favors citizens of Texas over citizens of other states in resolving

cases under its diversity jurisdiction.

Finally, the interests of justice support transfer of this case rather than dismissal.   Travis

Wolff raises a statute of limitations issue that cannot be resolved by this Court if it lacks personal

jurisdiction over the defendant.[12]   Therefore, if the case is dismissed, Jordan may not be able to

refile it because it may be time-barred.   This is exactly the result that § 1631 seeks to avoid.   *Clay*

*v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1272 (M.D. Fla. 2014).

For these reasons, if the Court accepts the recommendation that it cannot exercise personal

jurisdiction over Travis Wolff, I recommend that the case be transferred to the United States

District Court for the Northern District of Texas, Dallas Division pursuant to § 1631.

## V.     RECOMMENDATIONS.

For the reasons discussed above, I **RESPECTFULLY RECOMMEND** that the Court

**GRANT in part** Travis Wolff, LLP's Motion To Dismiss Plaintiff's Complaint And/Or Transfer

---

[12] "A court without personal jurisdiction is powerless to take further action."   *Posner*, 178 F.3d at 1214 n.6.

(Doc. No. 9) and **TRANSFER** this case to the United States District Court for the Northern District of Texas, Dallas Division.   Alternatively, if Jordan advises the Court that he does not wish to pursue this litigation in Texas, I recommend that the Court grant the motion in part and dismiss the case for lack of personal jurisdiction.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

Recommended in Orlando, Florida on September 15, 2015.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy