# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOHN JORDAN,**

**Plaintiff,**

**v.** **Case No: 6:15-cv-570-Orl-31KRS**

**TRAVIS WOLFF, LLP,**

**Defendant.**

---

## ORDER

This matter comes before the Court upon the Report and Recommendation (Doc. 31), entered by Magistrate Judge Karla Spaulding on September 15, 2015. In the Report and Recommendation, Magistrate Judge Spaulding concluded that this Court could not exercise personal jurisdiction over Defendant Travis Wolff and recommended that the case be transferred to the United States District Court for the Northern District of Texas, Dallas Division. She found the Defendant lacked sufficient minimum contacts with the State of Florida necessary for this Court to exercise specific personal jurisdiction over Travis Wolff in Florida. On September 29, 2015 the Plaintiff filed his objection to the Magistrate's R&R ("Objection") (Doc. 33). Defendant has not filed a response to that Objection.

I. Facts

A. The Parties

At all times relevant to the complaint, Jordan was a resident of Florida. He was the sole shareholder of Forward Logistics Group ("FLG"). Doc. No. 3 ¶ 6. FLG was a freight forwarding company based in OrangeCounty, Florida. Id. ¶ 1. Jordan is domiciled in Florida. Id. ¶ 14. Jordan does not own property in Texas; maintain a place of business in Texas; serve as an officer or board

member of any Texas company; or maintain any bank accounts, telephone numbers or post office boxes in Texas. Id. ¶ 16.

Travis Wolff is a registered Texas limited liability partnership engaged in the practice of public accountancy. Amended Kaufman Aff. ¶ 5. Its offices are located in Dallas, Texas. *Id.* ¶ 4. Travis Wolff possessed an accounting license in Florida from March 15, 2002 through December 31, 2011, but is not currently licensed to conduct business in Florida. *Id.* ¶ 12. For the time period January 2010 through March 2015, 1.4% of Travis Wolff's total number of clients had Florida addresses. *Id.* ¶ 15; McPherson Decl. ¶ 10 (documents produced by Travis Wolff showed more than thirty-one Florida addresses to which invoices were sent between 2010 and 2015). Travis Wolff performed work for these entities with Florida addresses, primarily preparing federal or state tax returns. Amended Kaufman Aff. ¶ 15. From January 2010 to June 2015, the "far majority" of Travis Wolff's business came from non-Florida clients. *Id.* ¶ 14.

Travis Wolff does not maintain a place of business in Florida. It has never owned any real estate, personal property or other assets in Florida. It never maintained any of its business records or materials in Florida. It did not and does not actively engage in advertising in Florida. Amended Kaufman Aff. ¶¶ 8-13. Travis Wolff is known internationally as Moore Stephens TravisWolff, LLP. Retainer Letter, at 2. Documents produced by Travis Wolff showed that it utilized the services of Moore Stephens Lovelace, an Orlando-based firm in the "Moore Stephens" global affiliate network, as agents to service Travis Wolff's clients. McPherson Decl. ¶ 11.

B. The Transaction at issue

Trans-Trade is engaged in a freight forwarding and customs house brokerage business. Doc. No. 3 ¶ 17. In 2010, Trans-Trade engaged in an industry "roll up" of freight forwarding companies. Id. ¶¶ 1, 10; Guy Decl. ¶ 3.

On or about January 18, 2010, Travis Wolff and Trans-Trade entered into an agreement for Travis Wolff to perform services for Trans-Trade and its subsidiaries. Amended Kaufman Aff. ¶ 17. Specifically, the scope of Travis Wolff's undertaking was to audit the consolidated balance sheet of Trans-Trade and its subsidiaries as of December 31, 2009, and the related consolidated statement of income, stockholders' equity, and cash flows for the period from September 11, 2009 to December 31, 2009 in accordance with auditing standards generally accepted in the United States. *Id.* ¶ 18; Retainer Letter. Travis Wolff also agreed to prepare certain tax returns for Trans-Trade. Retainer Letter, at 5.

Trans-Trade told Travis Wolff that it needed these audited financial statements for two reasons: (1) to satisfy its mezzanine finance requirements; and (2) to provide to prospective freight forwarding companies that Trans-Trade was seeking to purchase as part of its roll-up plan. Guy Decl. ¶ 4. Travis Wolff necessarily would have known that prospective sellers would be reviewing these audited financial statements as part of their due diligence. *Id.* ¶ 5.

The audit performed by Travis Wolff did not involve any travel to Florida, communication with anyone in Florida, or any business activity in Florida. Amended Kaufman Aff. ¶ 21. During the audit, all of the employees of Trans-Trade with whom Travis Wolff communicated were located in Texas. *Id.* ¶ 20. All Travis Wolff's work related to the audit was performed outside of Florida. *Id.* ¶ 22. Travis Wolff "did not maintain any contact" with Jordan or any representative of FLG while performing the audit. *Id.* ¶ 25

In April 2010, Travis Wolff issued its Auditors' Report to Trans-Trade for the period from September 2009 through December 31, 2009.[1] Doc. No. 22-1 ¶ 19.

[1] In June 2010, Travis Wolff reissued its Auditors' Report to Trans-Trade for the time period from September 2009 to December 31, 2009. Doc. No. 22-1 ¶ 19.

Also in April 2010, Trans-Trade began negotiations with Jordan to purchase FLG and all of its assets as part of its industry "roll up" of freight-forwarding companies. Doc. No. 3 ¶¶ 1, 10. As part of this process, senior officers of Trans-Trade provided to Jordan at the FLG offices located in Orlando, Florida audited financial statements of Trans-Trade and the Auditors' Report. Doc. No. 3 ¶ 10; Doc. No. 26-1 ¶ 7. Travis Wolff knew that Jordan would rely on the audited financial statements and Auditor's Report in making his decision whether to sell his FLG stock to Trans-Trade and accept earn-out payments in lieu of a lump-sum payment from Trans-Trade. Doc. No. 3 ¶ 10. Specifically, the Auditors' Report prepared by Travis Wolff states as follows:

> On April 13, 2010, the Company [Trans-Trade] executed a Letter of Intent whereby an acquisition entity of Trans-Trade, Inc. will acquire all of the assets and assume certain operating liabilities of FLG, Orlando, Florida for approximately $4,500,000; $2,000,000 due at close and the remainder in contingent "earn out" payments. The transaction is conditioned on the completion of customary due diligence and obtaining suitable financing.

*Id.*; Auditors' Report, at 24.

Jordan was induced by the Auditors' Report and the audited financial statements therein to consummate the sale of FLG and to accept as consideration for the purchase a substantial portion of the purchase price paid as an "Additional Price," consisting of "Contingent Payments" based upon a percentage of "Net Revenues" generated from FLG's former locations to be paid over two years, rather than as a lump-sum payment at closing. Doc. No. 3 ¶ 12; *see generally* Letter of Intent. The closing of Jordan's sale of his stock in FLG to Trans-Trade took place in Florida. Jordan Decl. ¶ 5.

In December 2010, after the sale of FLG to Trans-Trade had closed, the President of Trans-Trade told Jordan that the audited financial statements provided to Jordan were inaccurate because they failed to include payroll. Doc. No. 3 ¶ 13; Jordan Decl. ¶¶ 2, 13. These inaccuracies

significantly changed Trans-Trade's expected earnings before interest, taxes, depreciation and amortization ("EBITDA") based on what was presented to Jordan in the Auditor's Report. Doc. No. 3 ¶¶ 3, 13.

Notwithstanding the undisclosed financial problems of Trans-Trade, the core business acquired through FLG continued to prosper through February 2011. *Id.* ¶ 16. The former FLG business brought in over $8 million in revenue and over $2 million in gross profit. *Id.* ¶ 19. The Year One Contingent Payment due to Jordan in September 2011 was $641,900.76. *Id.* ¶ 20. Trans Trade failed to make the Year One and Year Two contingent payments to Jordan, except for a partial payment of $5,000.00. *Id.* ¶¶ 21-22.

II. Standard of Review

A district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112, 103 S.Ct. 744, 74 L.Ed.2d 964 (1983). In the absence of specific objections, there is no requirement that a district judge review factual findings de novo, *Garvey v. Vaughn*, 993 F.2d 776, 779 n. 9 (11th Cir. 1993), and the court may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions de novo, even in the absence of an objection. *See Cooper–Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir.1994); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1431–32 (S.D. Fla. 1993), aff'd, 28 F.3d 116 (11th Cir. 1994).

III. Personal Jurisdiction Analysis

The Court considers two questions in resolving whether personal jurisdiction exists. "First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mut. Serv. Ins. Co. v. Frit Indus.*, 358 F.3d 1312, 1319 (11th Cir. 2004). "Second, we

examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution . . . ." *Id.* The Due Process Clause "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v.Washington*, 326 U.S. 310, 316 (1945)).

A plaintiff seeking to establish personal jurisdiction over a non-resident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The facts alleged in the complaint are taken as true to the extent that they are not controverted by the defendant's affidavits. *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). However, a court need not accept legal conclusions or those facts that are not well pled. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (noting that "*only* the well pled facts of plaintiff's complaint . . . must be accepted as true" (emphasis added)). When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Mazer*, 556 F.3d at 1274 (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002)).

The Court may hold an evidentiary hearing on a motion to dismiss, but it is not required to do so. *Madara*, 916 F.2d at 1514. When, as here, a court does not hold an evidentiary hearing, if the allegations of the complaint and the evidence presented conflict, the court must draw all reasonable inferences in Plaintiff's favor. *Id.*

A. Specific Personal Jurisdiction under the Florida Long-Arm Statute

Magistrate Judge Spaulding concluded that Travis Wolff committed a tortious act in Florida through the negligent preparation of the Auditor's Report and thus subjected itself to the specific jurisdiction of the Florida long-arm statute, Fla. Stat. § 48.193(1)(a)(2). Since Defendant did not object to this conclusion, it stands unopposed, and the question becomes whether the exercise of jurisdiction over Defendant in Florida satisfies the constitutional due process standard.[2]

B. Minimum Contacts

Even if exercise of long-arm jurisdiction is proper under Florida's long-arm statute, this Court can exercise personal jurisdiction over Defendant only if it maintains certain minimum contacts with Florida such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). To constitute such minimum contacts, the defendant's contacts with Florida must: (1) be related to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefit and protection of its laws; and (3) be such that the defendant should reasonably anticipate being haled into court there." *Wallack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1367-68 (M.D. Fla. 2003) (citing *Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1994)). The first element is clearly satisfied here, so the Court must address whether Defendant's audit involved an act by which the Defendant purposefully availed itself of the privilege of conducting business in Florida such that it should reasonably have anticipated being haled into court here. Magistrate Judge Spaulding concluded

[2] Magistrate Judge Spaulding also concluded that general jurisdiction under Florida's long-arm statute would not apply. Plaintiff's objection to this finding is without merit.

that Defendant did not have these minimum contacts, and recommended transfer to Texas. This Court disagrees.

Judge Spaulding relied on *Thomas v. Brown*, 504 Fed. App'x 845, 846 (11th Cir. 2013) in reaching her conclusion that Defendant does not have sufficient minimum contacts with Florida necessary for this Court to exercise specific personal jurisdiction over Defendant. Thomas involved claims brought by a Florida entity against an Ohio law firm arising out of the defendant's representation of the Florida entity in a lawsuit filed in Ohio. There, the defendant's only contacts with Florida regarding the Ohio lawsuit involved telephone and electronic communications with two shareholders of the Florida entity who were later plaintiffs in the Florida lawsuit. *Id*. at 848. Accordingly, the Court found that the defendants did not purposefully avail themselves of conducting business in Florida. *Id*.

Travis Wolff purposefully availed itself of the privilege of conducting business in Florida when it prepared an audit knowing it would be relied upon by a Florida company in connection with the roll-up. In this regard, *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996) is instructive. In *Robinson*, the Court found minimum contacts where the defendants rendered estate planning services to the decedent knowing that he resided in Florida and that the will would be probated and the trust administered in Florida. *Robinson*, 74 F.3d at 258. There, as here "[t]he nature of the professional services rendered … was such that the defendants were fully aware that their actions or omissions would have a substantial effect in Florida. Defendant should have reasonably anticipated the possibility of a suit arising from conduct he knew was directed towards the Florida [Plaintiff]." *Id*. at 259.

The facts in the present case are similar to *Robinson*. Defendant knew that its Audit Report would be given to a Florida company in support of the proposed purchase of Plaintiff's company

in Florida, just as the attorney defendants in *Robinson* knew that their estate planning services would have a substantial effect in Florida. Plaintiff relied on that Audit Report and was damaged by its inaccuracy. Furthermore, Travis Wolff possessed an accounting license in Florida from March 15, 2002 through December 31, 2011, including during the time the Audit Report was prepared and distributed. As a result, Travis Wolff is not being haled into a Florida court as the result of any random, fortuitous, or attenuated contacts, or because of any unilateral activity by the Plaintiff. *Robinson*, 74 F.3d at 259. Finally, the evidence shows Travis Wolff did perform accounting work for a limited number of Florida clients by preparing federal and state tax returns. As a result of these contacts, Travis Wolff purposefully availed itself of the privilege of conducting business in Florida such that it should reasonably anticipate being haled into court here.

C. Fair Play and Substantial Justice

Due process authorizes the exercise of personal jurisdiction when "(1) the nonresident defendant has purposefully established minimum contacts with the forum;" and "(2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir.1997) (quoting Francosteel *Corp., Unimetal–Normandy v. M/V Charm, Tiki, Mortensen & Lange*, 19 F.3d 624, 627 (11th Cir.1994)). In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, the court looks at:

> (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several states in furthering fundamental substantial social policies.

*Future Tech. Today v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Both parties contend that it would be inconvenient for them to litigate this case in a forum other than where they reside and conduct business. Travis Wolff and Trans-Trade's witnesses with knowledge of the audit are located in Texas, which poses a burden on the Defendant. However, the State of Florida has a significant interest in adjudicating a dispute involving services provided by out-of-state professionals directed towards its residents. The Plaintiff, a Florida resident, has a great interest in the convenience of litigating in his home state. The burden on the Defendant occasioned by litigating outside of Texas is not slight, but modern methods of transportation and communication reduce this burden significantly. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957). Finally, this Court does not see any interest of the interstate judicial system in obtaining the most efficient resolution of controversies, or any interest of the states in furthering fundamental social policies that will be thwarted by litigating this case in Florida. These considerations do not defeat the Court's conclusion to assert personal jurisdiction over Travis Wolff. The assertion of personal jurisdiction here comports with fair play and substantial justice.

Therefore, it is:

**ORDERED** that Magistrate Judge Karla R. Spaulding's September 15, 2015 (Doc. 31) Report and Recommendation Granting Travis Wolff's Motion to Dismiss Plaintiff's Complaint And/Or Transfer is **REJECTED**. It is further **ORDERED** that Travis Wolff's Motion to Dismiss Plaintiff's Complaint And/Or Transfer (Doc. 9) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 13, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party